UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY STROTHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 1221 DDN |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before this court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Beverly Strother is not disabled and, thus, not entitled to either disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, or supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on January 30, 1968. (Tr. 69, 162). She protectively filed an application for DIB on August 29, 2013, and for SSI on September 19, 2013, alleging a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Berryhill is hereby substituted in her official capacity for Carolyn W. Colvin as the defendant in this action. 42 U.S.C. § 405(g) (last sentence).

May 14, 2013 onset date.[2]  (Tr. 162, 169).  Plaintiff claimed she was disabled due to back pain, pain in both knees, and central disc extrusion.  (Tr. 214).  Plaintiff's applications were denied, and she requested a hearing before an administrative law judge (ALJ).  (Tr. 69-88, 100, 108-12).  A hearing was held in May 2015, at which plaintiff and a vocational expert (VE) testified.  (Tr. 34-68).  By decision dated June 12, 2015, the ALJ found that plaintiff was not disabled under the Social Security Act.  (Tr. 11-28).  The ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform jobs available in significant numbers in the national economy.  *Id.*  Plaintiff requested the Appeals Council to review the ALJ's decision, submitting additional evidence in the form of a letter, four pages of medical records, and two medical opinions.  (Tr. 4).  On June 14, 2016, the Appeals Council denied plaintiff's request.  (Tr. 1-3).  Consequently, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, she asserts that the ALJ mischaracterized the evidence, improperly evaluated her mental impairments, improperly used her activities of daily living to discredit her complaints, and failed to consider the opinions of her treating physicians. (Doc. 21).

**A.**     **Medical Record and Evidentiary Hearing**

The court adopts the parties' unopposed statements of facts (Docs. 21, 26).  The court will discuss specific items of evidence as they relate to the parties' arguments.

---

[2] To be entitled to DIB, plaintiff has the burden to show disability prior to the expiration of her insured status on December 31, 2017.  (Tr. 210).  *See* 20 C.F.R. § 404.130; *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).  To be entitled to SSI, plaintiff must show disability while her application was pending.  *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335.  Thus, the relevant period for consideration in this case is from May 14, 2013, plaintiff's alleged onset date, through June 12, 2015, the date of the ALJ's decision.

**B.	ALJ's Decision**

The ALJ found that plaintiff met the insured status requirements through December 31, 2017. (Tr. 13). He also found that plaintiff had not engaged in substantial gainful activity since her alleged onset date and suffered from the severe impairments of:

> central disc extrusion at C3-C4; osteoarthritis of the wrists, hands, and knees; ulnar neuropathy, causalgia[3] of lower limbs; degenerative disc disease of the lumbar spine; scoliosis of the cervical, lumbar, and thoracolumbar spine; bilateral venous valvular incompetence without deep vein thrombosis; nasal valve collapse/trauma with sinusitis/rhinitis; depression; and post-traumatic stress disorder.

(Tr. 13). However, the ALJ concluded that none of these impairments, individually or in combination, met or equaled an impairment listed in the Commissioner's regulations. (Tr. 14-16).

With respect to plaintiff's mental impairment, the ALJ found that the "paragraph B" and "paragraph C" criteria were not met, because plaintiff had only mild restrictions in activities of daily living; moderate difficulties in social functioning and with regard to concentration, persistence, or pace; and no extended episodes of decompensation. (Tr. 15-16).

The ALJ determined that plaintiff's impairments left her with the RFC to:

> perform a range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), in that she can lift and/or carry ten pounds occasionally and less than ten pounds frequently; can stand/walk two hours in an eight-hour workday; and sit six hours in an eight-hour workday. She can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can never use her arms for reaching overhead. She can frequently reach in all other directions, handle, finger, and feel. She should never work at unprotected heights or with moving mechanical parts, but can have occasional exposure to vibration. She must avoid all exposure to humidity, wetness, extreme temperatures, dust, odors, fumes, and pulmonary irritants. She can perform simple, routine tasks. She can have frequent interaction with supervisors and coworkers, and have occasional interaction with the general public.

---

[3] "Complex regional pain." *Stedman's Medical Dictionary,* at 328 (Lippincott Williams & Wilkins, 28th ed., 2006) (illustrated in color).

(Tr. 16-17). In making this determination, the ALJ considered all of plaintiff's symptoms and the extent to which these symptoms were reasonably consistent with the objective medical evidence and other evidence. (Tr. 17-26).

The ALJ reasoned that the objective medical evidence did not substantiate plaintiff's allegations. (Tr. 17-26). Specifically, the ALJ observed that the record revealed largely normal physical findings, with "minimal" degeneration of the spine and "mild" scoliosis, but no evidence of any other abnormality in the bones, joint spaces, or soft tissues. (Tr. 20). The ALJ noted that the objective medical findings by plaintiff's treating physicians "did not include significant deficits in strength, neurological function, range of motion, posture, sensation, reflexes, pulses, or gait, lasting twelve months in duration." (Tr. 23). The ALJ further noted that the objective medical findings did not include significant deficits in plaintiff's ability to squat, stand, walk, sit, lift, carry, bend, or stoop for a period of at least twelve months. (Tr. 23). Plaintiff's treatment records never documented a finding precluding prolonged standing or walking. (Tr. 24). As for plaintiff's nasal valve and sinus impairments, plaintiff was advised that cigarette smoking exacerbated her symptoms, although she continued to smoke cigarettes daily. (Tr. 24). The ALJ emphasized that plaintiff's treatment was conservative. (Tr. 23-24). The ALJ also gave "little weight" to the opinion of plaintiff's chiropractor, Barry Wiese, D.C., because he was not an acceptable medical source. (Tr. 21).

As to plaintiff's mental impairments, the ALJ noted that plaintiff met with her counselor for only three months. (Tr. 23). The ALJ determined that the counselor's findings of marked or extreme limitation in functioning were "grossly inconsistent with the overall normal mental status examination findings within the record, including the lack of noted findings within [the counselor's] own progress notes." (Tr. 23). For this reason, the ALJ gave "little weight" to the opinion of plaintiff's counselor, Geannette Walls, LCSW. (Tr. 23). Plaintiff also consulted with Patricia Shaw, Ph.D., a psychologist, who did not assign plaintiff any specific work-related limitations. (Tr. 21). The ALJ gave little weight to Dr. Shaw's assessment because she was not a treating source and met with plaintiff only once. Plaintiff received a third evaluation from Jay L.

4

Liss, M.D., a psychiatrist, who also met with plaintiff only once for the purpose of a workers' compensation claim. For these reasons, the ALJ also gave Dr. Liss's opinion little weight.

Finally, the ALJ relied on the testimony of a VE to find that there were unskilled, sedentary final assembler optical, semiconductor bonder, and taper circuit layout jobs in significant numbers in the national economy that a person with plaintiff's RFC, age, education, and work experience could perform. (Tr. 26-27). Accordingly, the ALJ concluded that plaintiff was not disabled. (Tr. 27).

## II. DISCUSSION

Plaintiff argues that the ALJ mischaracterized the evidence, improperly evaluated her mental impairment, improperly evaluated her activities of daily living, and improperly discounted the opinions of her treating physicians. The court disagrees.

### A. General Legal Principles

In reviewing the denial of Social Security disability benefits, the court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in a death or which has lasted or could be

5

expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.  20 CFR § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Step Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW).  *Id.* § 404.1520(a)(4)(iv).  The claimant bears the burden of demonstrating she is no longer able to return to her PRW.  *Pate-Fires*, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

### B.     <u>The ALJ's Characterization of the Evidence</u>

Plaintiff argues that the ALJ improperly interpreted her objective medical findings as "essentially normal."  Plaintiff alleges that the objective medical evidence revealed some abnormalities and so finding that they were "essentially normal" is a mischaracterization.

The ALJ thoroughly considered and discussed the objective medical evidence and found that it did not support a finding of disability.  The ALJ's characterization of the evidence as "essentially normal," appears to have been derived from the medical findings themselves, not based on his own interpretation.  The ALJ pointed to specific medical findings of "normal" results.  Records routinely noted that plaintiff had normal strength and ranges of motion, with a normal gait and station.  (Tr. 359, 364-65, 401, 479-80, 498,

500, 505-06, 517-18, 523, 541-42, 552-53, 555-57, 564, 568-69, 573-74, 718-19, 740-41, 766-67, 808).

In July 2013, an examination of plaintiff's musculoskeletal system revealed overall normal findings, with a full range of motion in all large joints, no muscle tenderness, no trigger points, and full motor strength in all extremities. (Tr. 401). X-rays of her back in July 2013 revealed only minimal degenerative changes and mild dextral curvature, with no spinal stenosis. (Tr. 20, 398). In February 2014, plaintiff's doctor found her cervical spine to have a normal appearance and normal spine motion. (Tr. 569). Although plaintiff's lumbar spine "exhibited abnormalities," it had a normal appearance, palpation revealed no abnormalities, and her spine motion was normal, and straight-leg raising tests of both legs were negative. (Tr. 569). X-rays of plaintiff's cervical, thoracic, and lumbar spines at that time revealed "mild" scoliosis. (Tr. 604). In March 2014, a doctor's examination revealed plaintiff had full range of motion in all of her joints "with ease." (Tr. 564). In August 2014, a doctor opined that x-rays of plaintiff's knees showed mild osteoarthritis. (Tr. 719). In November 2014, x-rays of plaintiff's left shoulder showed "minimal" osteoarthritis. (Tr. 603). In February 2015, plaintiff's chiropractor reported that she was "performing well and demonstrated considerable improvement in endurance and strength [in her strengthening exercises] while exhibiting very good form." (Tr. 486). Her doctor reported that her activities of daily living were normal. (Tr. 498). In March 2015, plaintiff had a negative compression test of the cervical spine and her thoracic and thoracolumbar spines exhibited normal curvature. (Tr. 479). At that visit, her chiropractor recorded that plaintiff "tolerated treatment well and was very pleased as she dismounted treatment table." (Tr. 480). X-rays of plaintiff's wrists at that time showed only mild osteoarthritis. (Tr. 677-80).

Plaintiff argues that the ALJ improperly found that "aside from portrayals of tenderness [in her left knee], objective medical findings were normal." (Tr. 20). Plaintiff argues that a November 2014 x-ray showed degenerative change in the left knee and that plaintiff was diagnosed with reactive arthritis. (Tr. 641-45). The record shows that the doctor examining plaintiff's knee stated "[t]here is degenerative change without fracture

7

or dislocation or joint effusion." (Tr. 645). But he also found the left knee to exhibit a normal range of motion, though with some localized tenderness, and noted that plaintiff appeared in no distress. (Tr. 641).

Plaintiff argues that the fact that there was no fracture, dislocation, or joint effusion did not mean plaintiff was not in pain or that the findings were normal. Although the ALJ stated the objective findings were "normal," he credited plaintiff's complaints of knee pain and limited plaintiff to a sedentary level of work with additional postural and environmental limitations. (Tr. 16-17; *see also* Tr. 26 (finding that plaintiff and the record failed to prove greater restrictive limitations than those determined by the ALJ) ). This adequately accounted for the degree of pain supported by the record. While an ALJ may not discount a plaintiff's subjective complaints of pain based on the lack of supporting medical evidence alone, that lack is nevertheless a factor the ALJ may consider in determining the plaintiff's credibility. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004). The ALJ may discount subjective allegations of pain if the evidence as a whole is inconsistent with the plaintiff's testimony. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

Plaintiff further argues that the ALJ erred in stating that plaintiff never complained of side effects from medication. (Tr. 24). Plaintiff points to three instances in the record suggesting otherwise. Two of the instances are from opinions not in the record at the time the ALJ issued his decision, and in any event, they do not state that plaintiff herself was experiencing these side effects to any severe degree, only that fatigue and dizziness are side effects of plaintiff's medication. (Tr. 889, 893). The remaining instance is plaintiff's report at a May 2013 psychiatric visit that Seroquel "makes her feel tired and difficult to get up in the morning." (Tr. 361, also referenced at 595). As to plaintiff's response to medication, the ALJ explained:

> It is reasonable to assume that the claimant would have informed her physician of side effects that were *seriously* impairing her functional capacity so that adjustments could be made. The medical records do not document any physician's findings that the claimant has had *persistent* and *adverse* side effects due to prescribed medication, resulting in *significant*

limitations of functional capacity that were *incapable of being controlled* by medication adjustments or changes. Actually, the treatment records document non-compliance on the part of the claimant with regard to medication and treatment recommendations and that when compliant, her symptoms are controlled.

(Tr. 24-25) (emphasis added). The ALJ concluded that there were no "persistent" side effects "seriously impairing" plaintiff's RFC and "incapable of being controlled" by adjustments to the medication, and the evidence pointed to by the plaintiff does not refute this conclusion. Even if the ALJ did overlook plaintiff's May 2013 report that Seroquel makes her feel tired, there is no indication that the ALJ would have decided differently had he considered this one-time report. If there is no indication that the ALJ would have decided differently, any error by the ALJ is harmless. *Van Vickle v. Astrue*, 539 F.3d 825, 830–31 (8th Cir. 2008).

The overall record supports limitations consistent with the ALJ's RFC determination that plaintiff could perform a range of unskilled sedentary work, but it does not support a greater degree of limitations.

C. **Plaintiff's Mental Impairments**

The plaintiff argues that the ALJ improperly discounted the opinions of mental health professionals finding plaintiff had substantial mental limitations. She asserts that the ALJ improperly ignored the multiple providers' opinions and cited either the lack of specific findings or only those findings in support of his ultimate decision. Plaintiff argues this contravenes the ALJ's duty to consider all evidence, including evidence that might detract from an ALJ's conclusion.

The ALJ properly considered the extent of plaintiff's mental limitations and did not err in discounting the opinions in question. (Tr. 21-23). A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-2p. But a physician's statement that is not supported by diagnoses based on

9

objective evidence will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (ALJ may discount a physician's opinion if the opinion is internally inconsistent).

At the time of the ALJ's decision, there were three mental health opinions in plaintiff's record: two from one-time consultative examiners and one from a licensed clinical social worker who had counseled plaintiff for three months. The ALJ stated he gave each opinion little weight because none of the examiners had been treating physicians or had met with plaintiff long enough to be reliable. (Tr. 21-22).

In August 2012, plaintiff saw Dr. Shaw for a consultative psychological evaluation with regard to a worker's compensation claim. Plaintiff had been physically assaulted at work earlier that year and, since the attack, was reporting fear, nervousness, paranoia, insomnia, lack of concentration, and hypervigilance. (Tr. 21, 410-11). Dr. Shaw observed that plaintiff had been diagnosed with PTSD, and she did not assign any specific mental-related work limitations. (Tr. 21, 410-11).

Similarly, in July 2013, plaintiff saw Jay L. Liss, M.D., a psychiatrist, for a psychiatric evaluation, again on referral from her worker's compensation attorney. Plaintiff continued to report several symptoms, including crying spells, anxiety, panic attacks, fearfulness, obsessive traits, defensiveness, anger outbursts, irritability, and poor concentration. (Tr. 412-14). Dr. Liss diagnosed plaintiff with PTSD, opining that she "has a partial/permanent disability of at least 70% of the person as a whole," due to PTSD and that her combined physical and mental impairments made it impossible to work a 40-hour week. (Tr. 22, 415).

Finally, Geannette Walls, LCSW, met with plaintiff from February through April 2015. (Tr. 23, 465-68, 481-84, 493-96). In April 2015, Ms. Wells completed a mental capacity questionnaire and indicated plaintiff had marked to extreme limitations. (Tr. 23, 670-74).

The ALJ did not err in giving each of these opinions little weight. Dr. Shaw performed a one-time consultative evaluation on referral from the claimant's worker's compensation attorney. (Tr. 21). Dr. Liss was also not a treating source, but a one-time

consultative examiner for the purpose of worker's compensation. Ms. Walls saw plaintiff only for a three-month period before setting forth her opinion and, as a social worker, she was not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513, 416.913. As to Dr. Liss's opinion that plaintiff was "70 percent disabled," the ALJ noted that a medical source opinion that an applicant is "disabled" or "unable to work" is not the type of medical opinion to which the Commissioner gives controlling weight. *McDade v. Colvin*, 720 F.3d 994, 1000 (8th Cir. 2013); SSR 96-5p.

Additionally, these opinions were not consistent with the other mental health evidence in the record. The ALJ may properly discount an opinion when it is inconsistent with the medical provider's own treatment notes or other medical opinions. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Dr. Shaw observed that plaintiff was forthright, open, easily established rapport, and appeared to be of average intelligence. (Tr. 21, 410-11). Her speech and judgment were good and her speech and affect were normal. Dr. Shaw noted no abnormalities in thought process, thought content, mood, or cognition, nor did she assign any specific mental-related work limitations. (Tr. 21, 410-11). Dr. Liss similarly found plaintiff had a pleasant and cooperative affect, normal speech, no evidence of a formal thought or thought content disorder, no evidence of a personality disorder, and a good fund of knowledge and average intelligence. (Tr. 22, 415). Ms. Walls observed that plaintiff had fair insight and judgment and was able to understand and respond meaningfully. (Tr. 467). In February 2015, Ms. Walls stated plaintiff had recent emotional stress but was "coping effectively." (Tr. 495). The treatment notes of plaintiff's treating psychiatrist, Alicia Gonzalez, M.D., document diagnoses of PTSD and depression but note essentially normal findings, with occasional depressed mood, intact memory, and good response to medication. (Tr. 508-09, 535-37, 549, 558-59, 593-94). Dr. Gonzalez noted plaintiff was having some difficulty sleeping but was otherwise "responding fairly well to medication." (Tr. 558). Dr. Gonzalez observed that plaintiff's overall mental condition was "improved" in July 2014 and "stable" in October 2014. (Tr. 535, 549).

Additionally, as the ALJ noted, plaintiff's own reports and treatment were inconsistent. Plaintiff reported to Dr. Liss that she had been off work since May 2013 due to knee problems, not for mental health problems. (Tr. 412). She also reported to Ms. Wells that she was filing for disability due to her leg, not any mental health problems. (Tr. 483). She told Dr. Gonzalez she couldn't work due to her physical problems—her "knees give out occasionally"—again, not for mental health problems. (Tr. 593). The ALJ noted that plaintiff had not had any psychiatric care or counseling prior to the work incident and subsequently returned to work on light duty. (Tr. 412-13).

Finally, the opinions of Ms. Walls and Dr. Gonzalez consist mostly of check-marked boxes with little to no explanation. (Tr. 670-74, 893-97). The Eighth Circuit has ruled that a form, like the check-box form used by Ms. Walls and Dr. Gonzalez, has "little evidentiary value when it cites no medical evidence, and provides little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (citations omitted). Furthermore, checkmarks on a form "are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record." *Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011).

In sum, substantial evidence exists to support the ALJ's conclusion that the three opinions concerning plaintiff's mental health were not consistent with the overall normal mental status examination findings in the record, including those of Dr. Shaw, Dr. Liss, and Ms. Walls. (Tr. 23, 467, 483, 495, 508-09, 535-37, 549, 558-59, 593-94, 670, 674).

However, plaintiff further argues that even assuming that the ALJ properly discounted all of the opinions, the ALJ's determination of her mental RFC, i.e., that plaintiff could have frequent interaction with supervisors and coworkers and occasional interaction with the general public, is not supported by substantial evidence in the record. (Tr. 16-17). In assessing the plaintiff's RFC, an ALJ must consider all of the relevant evidence, including "an individual's own description of his limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003). The ALJ must explain his assessment of the RFC with specific references to the record. SSR 96-8p (the RFC assessment must cite "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.,

daily activities, observations)" in describing how the evidence supports each conclusion). Throughout this inquiry, the burden of persuasion to prove disability and to demonstrate RFC is on the plaintiff. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ considered all the relevant evidence in determining plaintiff's noted RFC. The ALJ noted that plaintiff was able to continue working and socializing at the same time she was reporting her social difficulties. (Tr. 16-26). He also considered her activities of daily living to be inconsistent with more severe limitations, including her ability to live independently, shop, drive, pay bills, use a checkbook, watch television, spend time with others, and go fishing. (Tr. 16).

Although the ALJ must consider all relevant evidence, rather than just evidence from medical professionals, the record must contain at least some medical evidence to support the ALJ's determination of residual functional capacity. *Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001). The ALJ determined that plaintiff's mental treatment notes record no specific or ongoing work-related limitations due to any mental impairment. (Tr. 23). He observed that Ms. Walls's notes "contain little more than subjective complaints and no objective medical findings supporting a more restrictive residual functional capacity." (Tr. 23). Although plaintiff self-reported that she was aggressive with and had difficulty getting along with others (Tr. 508), medical professionals reported they were able to easily establish a rapport with her. (Tr. 410). The ALJ emphasized their reports that plaintiff was "forthright and open," "was pleasant," and "was cooperative" with her healthcare providers. (Tr. 21-22, 410-15, 474).

Drs. Shaw and Liss did not opine that plaintiff would have significant difficulties interacting with supervisors or coworkers in the workplace. Plaintiff was assaulted by a patient at her Mental Health Center place of employment and reported it affecting her ability to interact with patients and other members of the public. (Tr. 410-11). She reported that she was no longer able to give patients authoritative commands and that she was afraid of them. (Tr. 411). This supports the ALJ limiting plaintiff's RFC to only occasional interactions with the public.

13

Substantial evidence, therefore, supports the ALJ's decision. There is evidence that detracts from the Commissioner's decision, in particular the opinions of Dr. Gonzalez and Ms. Walls that plaintiff was unable to get along with co-workers or respond appropriately to supervisors (Tr. 672, 895). But the court may not reverse the decision merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

D. **Plaintiff's Activities of Daily Living**

Plaintiff next argues that the ALJ improperly used plaintiff's limited activities of daily living to discredit her complaints. In her September 2013 function report, plaintiff stated her meals included sandwiches, frozen pizza, and salad; she does laundry every 2-3 weeks; and she cleans once a month. (Tr. 242-43). She also indicated she has one friend, gets along "okay" with authority figures, and tries to avoid stress or stressful people. (Tr. 245-46).

At the May 2015 hearing, plaintiff testified that she does household chores, cooks, takes out the trash when needed, and shops for groceries. (Tr. 55-56). She does not go to church, or visit friends or family, and feels that people "use" her. (Tr. 55-56). Plaintiff also testified that she tries to read and watch television but cannot pay attention. (Tr. 55-56).

The ALJ discounted plaintiff's testimony about the severity of her symptoms due to her ability to live alone, drive, shop in stores, pay bills, use a checkbook, watch television, and spend time with others. (Tr. 16, 25). The ALJ noted that plaintiff went fishing occasionally and reported to doctors that she had performed yard work and worked on repairing a roof. (Tr. 16, 25).

While the ability to perform sporadic, light activities does not mean a claimant is able to perform full-time work, *Buress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998), the ALJ properly considered evidence of plaintiff's activities of daily living and found this evidence inconsistent with her allegations of totally disabling physical or mental

14

limitations. (Tr. 16, 20, 25). The record evidence indicates plaintiff prepared simple meals, did laundry and cleaned, lived independently, drove, shopped in stores, paid bills and used a checkbook, watched television and spent time with others, went fishing twice over the summer, and could reportedly lift 25 pounds without pain. (Tr. 16, 25, 55-57, 240-46). The Eighth Circuit has noted that activities that are inconsistent with a claimant's assertion of disability can reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). "[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009). The ALJ did not err in considering plaintiff's activities of daily living to be inconsistent with her complaints.

E. **Opinions of Treating Physicians Dr. Gonzalez and Dr. Spearman**

Finally, plaintiff argues that the ALJ formed his own opinion based on some of the medical evidence, instead of relying on the opinions of treating sources. *Dixon v. Barnhart*, 324 F.3d 997 (8th Cir. 2003). She argues that the ALJ did not properly evaluate the opinion of plaintiff's treating physicians, Drs. Gonzalez and Spearman. Both of these doctors completed RFC questionnaires giving plaintiff more limitations than those contained in the ALJ's RFC determination. (Tr. 889-95). Dr. Spearman limited plaintiff to less than sedentary-level work, opined she was incapable of even low-stress jobs, and predicted she would be absent more than four days per month due to her impairments. (Tr. 889-92). Dr. Gonzalez opined that plaintiff was unable to deal with typical work stress or meet competitive standards in most of the mental abilities required for unskilled work. (Tr. 895). The ALJ did not discuss these opinions in his decision.

However, this court notes these opinions are dated after the ALJ's decision and were not part of the record for the ALJ to review. The ALJ issued his decision in June 2015, and these doctors did not prepare medical source statements until July and September 2015. (Tr. 889-98). Plaintiff submitted these opinions only as newly

15

submitted evidence to the Appeals Council in support of her request for review. (Tr. 1-5).

If it is clear that the Appeals Council has considered newly submitted evidence, the federal court does not evaluate their decision to deny review based on new evidence. *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995). Instead, the court's role is limited to deciding whether the ALJ's determination is supported by substantial evidence in the record as a whole, including new evidence submitted after the determination was made. *See id.*; *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

The Appeals Council considered the new evidence and determined it did not provide a basis for changing the ALJ's decision. (Tr. 2, 4-5) ("we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council"). There is no requirement that the Appeals Council articulate its reasons for denying review. 20 C.F.R. § 404.970(b). The court has already discussed the substantial evidence supporting the ALJ's RFC determination. Even with the additional evidence, the ALJ's decision is supported by substantial evidence in the record as a whole. The evidence from the relevant period, as discussed above, includes treatment records, x-rays, objective observations and measurements, and plaintiff's activities of daily living. (Tr. 55-57, 240-46, 336-37, 343, 359, 365, 372, 379, 397-98, 401, 415, 491, 505-06, 508-09, 517, 523, 535-37, 542, 552, 557-59, 564, 569, 593-94, 603-04, 624-30, 648-54, 667, 677-80, 718-19, 741, 796, 808). Substantial evidence in the record as a whole supports the ALJ's decision and the new evidence does not constitute a basis to change the decision or remand for further proceedings.

## III. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                    /S/   David D. Noce
                              **UNITED STATES MAGISTRATE JUDGE**

Signed on September 20, 2017.